## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JENNIFER STALLARD | |
| Plaintiff, | Civil Action No. 1:21-cv-02257-MLB |
| v. | |
| OSMOSE UTILITIES SERVICES, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

## AMENDED COMPLAINT

COMES NOW Plaintiff Jennifer Stallard ("Plaintiff"), through her undersigned counsel, and files this Amended Complaint against Osmose Utilities Services, Inc. ("Osmose" or "Defendant"), and shows the Court as follows:

## NATURE OF COMPLAINT

1.     Plaintiff brings this action to obtain full and complete relief for Defendant's failure to pay Plaintiff for all hours worked and for overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (the "FLSA") and for claims of retaliation under Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and failure to accommodate, discriminatory termination and retaliation under the Americans with Disabilities Act of 1990, as

amended, 42 U.S.C. § 12101 *et seq.* ("ADA").  In addition, Plaintiff asserts claims of retaliation and interference under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

## **JURISDICTION AND VENUE**

2.     This action asserts claims under the FLSA, Title VII, the ADA and the FMLA.  Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this Amended Complaint.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant resides in this judicial district and a substantial part of the events and omissions giving rise to this Amended Complaint occurred within the Northern District of Georgia.

## **PARTIES**

4.     Plaintiff is a female citizen of the United States of America and a resident of the State of Virginia; she submits herself to the jurisdiction of this Court.

5.     Defendant is a for-profit business that is licensed to conduct business in Georgia.  Defendant is headquartered at 635 Hwy 74 S, Peachtree City, Georgia 30269.

2

6.    Defendant may be served with process via its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7.    During all times relevant to Plaintiff, Defendant was Plaintiff's "employer" within the meaning of the FLSA, Title VII, the ADA, and the FMLA.

8.    At all times relevant to this Amended Complaint, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, Title VII, the ADA and/or the FMLA.

9.    At all relevant times, Defendant was an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 206 and § 207.

10.    Upon information and belief, Defendant had gross annual revenues in excess of $500,000.00 at all times relevant to Plaintiff's claims.

11.    Defendant employed Plaintiff from August 2017 through on or about October 4, 2019.  Plaintiff's last job position with Defendant was Senior Technician.

12.    At all times relevant to this Amended Complaint, Defendant classified Plaintiff as a non-exempt employee.

13.    At all relevant times, Defendant maintained a practice of paying Plaintiff a weekly rate that did not compensate her for all compensable hours and failed to pay her all owed overtime compensation.

3

## ADMINISTRATIVE PREREQUISITES

14.     Plaintiff has satisfied all administrative prerequisites to bring her Title VII and ADA claims in this Court.

15.     Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about December 10, 2019.

16.     On August 17, 2021, the EEOC issued a Letter of Determination finding that "there is reasonable cause to conclude that Charging Party was discriminated against because of her disability and discharged in retaliation for requesting an accommodation, in violation of the ADA."  A true and correct copy of the EEOC's Letter of Determination issued to Defendant is attached as Exhibit 1.

17.     On September 8, 2021, Plaintiff received her Notice of Right to Sue from the EEOC.

18.     Plaintiff filed this Amended Complaint within ninety (90) days of the receipt of her EEOC Notice of Right to Sue.

## STATEMENT OF FACTS

19.     Plaintiff was hired by Defendant in August 2017 as a crew member.

20.     Plaintiff suffers from serious health disorders, which substantially interfere with her major life activities.

21.     Plaintiff was promoted to the position of Foreman Trainee in January 2018.

22.     After successfully completing training, Plaintiff was promoted to the position of Foreperson in February 2018.

23.     In January 2019, Plaintiff was promoted to the position of Senior Technician.

24.     Defendant terminated Plaintiff on or about October 4, 2019.

25.     At all relevant times, Plaintiff was classified by Defendant as a non-exempt employee.

26.     During the time that Plaintiff worked as a Foreperson, she performed pre- and post-shift work for which she was not compensated.  This work included cleaning and sharpening tools, inventorying the materials used (chemicals, tarps and tools), payroll, loading and unloading the Utility Terrain Vehicle ("UTV"), picking up other crew members to take them to a job site, and ensuring crew members took the required company tests.

27.     Plaintiff estimates that she spent 11-14 hours per week on these tasks from January 1-December 31, 2018.

28.     These unpaid pre-shift and post-shift hours, if properly counted, would have caused Plaintiff's weekly hours worked to exceed 40, and therefore should have been compensated at her overtime rate of pay.

29.     In addition, as both a Foreperson in 2018 and as a Senior Technician from January 1, 2019 through her termination on October 4, 2019, Plaintiff was not compensated for monthly travel time between her home in Danville, Virginia and her out-of-town work location(s).

30.     Plaintiff's out-of-town work locations were assigned by Defendant. Defendant required Plaintiff to travel away from her home community overnight and during normal work hours.

31.     The FLSA provides that when employers require that employees travel away from their home communities overnight, "travel away from home is clearly worktime when it cuts across the employee's workday."  29 C.F.R. § 785.35; *see also* WHD Opinion Letter FLSA-292 (Jan. 9, 1951) (concluding that compensable time includes "all time spent in such travel during the hours which correspond to [the employee's] normal working hours, including those hours on Saturday and Sunday which correspond to [the employee's] normal working hours on other day of the week.").

32.    During the time she worked as a Foreperson, Plaintiff estimates that she traveled between out-of-town worksites from her home in Danville, Virginia approximately twice per month for which time she was not compensated.

33.    As a Senior Technician, Plaintiff estimates she spent 16-20 hours of travel time each month traveling between home and her out-of-town work locations for which she was not compensated during 2019.

34.    If properly counted, these travel hours would have caused Plaintiff's weekly hours worked to exceed 40, and therefore should be compensated at her overtime rate(s) of pay.

35.    During the applicable statutory period, Plaintiff routinely worked in excess of forty (40) hours in a workweek without receiving overtime compensation for her overtime hours worked.

36.    Defendant willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201, *et seq*., as described in this Amended Complaint in ways including, but not limited to, failing to compensate Plaintiff for pre- and post-shift work, failing to compensate Plaintiff for all travel time between her home and out-of-town work location, and failing to pay Plaintiff overtime compensation due.

37.    Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

38.    As a result of the unlawful acts of Defendant, Plaintiff has been deprived of wages for all hours worked in an amount to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs.

39.    Throughout her employment, Plaintiff performed her job duties in a satisfactory manner.

40.    In August 2019, Plaintiff applied for a Supervisor position.

41.    Plaintiff was not selected for the position, and instead, the position was given to a male employee with lesser qualifications than Plaintiff.

42.    On or about September 26, 2019, Plaintiff complained to her supervisor, Nathan Speicher, that women in the company were not given the same opportunities as men to advance to management positions.

43.    After Plaintiff's complaint to Mr. Speicher, he began to micromanage Plaintiff and criticize her job performance.

44.    During the month of September 2019, Mr. Speicher conducted three QCs of Plaintiff's work performance.

45.    On or about September 9, 2019, Mr. Speicher gave Plaintiff a 2.94 average rating. This score exceeded the expectation of 2.6 for Plaintiff's Level 2 position, and the Level 3 expectation of 2.8.

46.     On or about September 10, 2019, Mr. Speicher performed a QC and gave Plaintiff a 3.37 QC rating.

47.     This score also exceeded expectations for Plaintiff's position (Level 2), as well as the next higher level (Level 3).

48.     On September 25, 2019, when Plaintiff was not working, Mr. Speicher performed another QC.  On this date, he gave Plaintiff a 2.48 average rating.

49.     Despite this QC rating, Ms. Stallard's overall QC rating was well above the level expected for her position.

50.     Additionally, when she received her QC rating for September 25, 2019, Plaintiff was informed that she would be given follow up feedback, if necessary, on October 11, 2019.

51.     Plaintiff was also told that she would be limited to working eight (8) hours per day due to the low QC score.  She had not previously been limited in the number of hours she worked per day.

52.     On October 2, 2019, Plaintiff again engaged in protected activity.  On that date, Plaintiff emailed supervisors Mr. Speicher, John Bond and Eli Walkley regarding her disability and requested that her schedule be adjusted to accommodate her disability.

53.     Due to her disability, on October 2, 2019, Plaintiff requested a flexible work schedule that would allow her to work more than eight (8) hours per day, so that she could make up any hours she missed in a given week due to her disability.

54.     Because of her disability, Plaintiff suffers good days and bad mental health days each week.

55.     In order to hit her production numbers, Plaintiff requested a reasonable accommodation of being allowed to work a flexible schedule each week, instead of being limited to eight (8) hours per day, which would allow her to take advantage of more working time on her good days.

56.     Prior to her retaliatory QC rating from September 25, 2019, Plaintiff had been allowed to work a flexible schedule that allowed her to work longer hours on days she was feeling well.

57.     Mr. Bond denied Plaintiff's request to work more than eight (8) hours a day so she again submitted her request for a reasonable accommodation to the next level supervisor, Buck Braswell, and to Human Resources on October 3, 2019.

58.     In her October 3, 2019 email to Mr. Braswell and Human Resources, Plaintiff again raised her concerns about the lack of promotional opportunities for women with Defendant.

59.     Rather than engaging in the interactive process or asking Plaintiff for additional information regarding her requested accommodation, according to the paperwork submitted by Osmose, the very next day, on October 4, 2019, Mr. Speicher requested approval for Plaintiff's termination.

60.     Mr. Speicher's termination request noted the reason as "inconsistant [*sic*] schedule."

61.     A flexible work schedule was the very accommodation that Plaintiff requested from Mr. Speicher and others due to her disability just two days prior to Plaintiff's termination.

62.     On October 4, 2019, Plaintiff's employment was terminated.

### COUNT ONE
### Violations of the Fair Labor Standards Act
### (Failure to Pay for All Hours Worked)

63.     Plaintifff reasserts and incorporates by reference all preceding paragraphs of the Amended Complaint.

64.     The FLSA requires employers, such as Defendant, to minimally compensate employees, such as Plaintiff, at the federal minimum wage for each hour worked.

65.     Defendant violated the FLSA by failing to compensate Plaintiff for pre- and post-shift work during the time she worked as a Foreperson.

11

66.     Defendant required Plaintiff to perform the following pre- and post-shift job duties without compensation:  cleaning and sharpening tools, inventorying the materials used (chemicals, tarps and tools), payroll, loading and unloading the utility vehicles, picking up other crew members to take them to a job site, and ensuring crew members took the required company tests.

67.     Defendant violated the FLSA by failing to compensate Plaintiff during the time she spent performing pre- and post- shift work from January 1-December 31, 2018.

68.     Defendant also violated the FLSA by failing to compensate Plaintiff for monthly travel between her home in Danville, Virginia to her out-of-town work location(s) from January 1, 2019 through her termination on October 4, 2019.

69.     Plaintiff estimates she spent 16-20 hours of travel time each month traveling between home and her out-of-town work locations for which she was not compensated during 2019.

70.     At all relevant times, Defendant failed to maintain accurate records of Plaintiff's actual work hours in violation of the FLSA's recordkeeping requirements.

71.     From January 2018 through October 2019, Defendant required, suffered and/or permitted Plaintiff to work without paying Plaintiff for all hours worked each workweek.

72.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost income and other damages.

73.    Defendant's conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).   Defendant knew or showed reckless disregard for the fact that its pay practices were in violation of the law.

74.    As a result of the unlawful acts of Defendant, Plaintiff has been deprived of wages for all hours worked in an amount to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs.

## COUNT TWO
## Fair Labor Standards Act
**(Failure to Pay Overtime Compensation)**

75.    Plaintifff reasserts and incorporates by reference all preceding paragraphs of the Amended Complaint.

76.    From January 2018 through October 2019, Defendant required, suffered and/or permitted Plaintiff to work more than forty (40) hours per week without paying Plaintiff time and one-half her regular hourly rate for all hours worked over forty (40) in a week.

77.    From January 2018 through October 2019, Plaintiff consistently worked more than forty (40) hours per week but was not paid time and one-half her regular hourly rate(s) of pay for any and all hours worked over forty (40) per week.

78.    Defendant failed to maintain accurate records of Plaintiff's actual hours in violation of the FLSA's recordkeeping requirements.

79.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered a loss of income and other damages.

80.    Defendant's conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).   Defendant knew or showed reckless disregard for the fact that the pay practices were in violation of the law.

81.    As a result of the unlawful acts of Defendant, Plaintiff has been deprived of overtime wages at a rate of one and one-half her regular hourly rate of pay for any and all hours worked over forty (40) per week in an amount to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs.

## COUNT THREE
### Title VII
### (Retaliation)

82.    Plaintifff reasserts and incorporates by reference all preceding paragraphs of the Amended Complaint.

83.    Plaintiff engaged in protected activity under Title VII by complaining of gender discrimination to her supervisor on or about August 25, 2019 and multiple times thereafter.

84.    Defendant retaliated against Plaintiff for engaging in protected activity covered by Title VII by, among other things: (a) micromanaging her job performance; (b) giving her an unwarranted low QC rating which impacted her pay and altered her work hours; (c) imposing different rules regarding working hours for Plaintiff, and (d) ultimately terminating her employment.

85.    As a consequence of the retaliation she experienced from Defendant, Plaintiff has experienced lost wages, emotional distress, humiliation, inconvenience, mental anguish, loss of enjoyment of life and has experienced serious related health problems.

86.    The actions and inactions of Defendant in retaliating against Plaintiff for engaging in protected activity were willful, wanton and in reckless disregard for Plaintiff's rights under Title VII.

87.    Defendant acted with malice or reckless indifference to Plaintiff's Title VII rights.

88.    Plaintiff seeks all available relief under Title VII, including compensatory damages, punitive damages, interest, reasonable attorneys' fees and costs.

## COUNT FOUR
### Americans with Disabilities Act
#### (Failure to Accommodate)

89.    Plaintifff reasserts and incorporates by reference all preceding paragraphs of the Amended Complaint.

90.    At all relevant times Plaintiff was an "employee" of Defendant within the meaning of the ADA.

91.    Plaintiff suffers from multiple serious health conditions that substantially limit one or more major life activities.  Such conditions are a "disability" within the meaning of the ADA.

92.    Plaintiff has a history of these serious medical conditions, and even when not presently experiencing symptoms related to her mental health disorders, she has a record of having this disability and/or is perceived as having a disability.

93.    At all relevant times Plaintiff was qualified for her position with Defendant and could perform the essential functions of the position.

94.     On October 2 and 3, 2019, Plaintiff sent emails to Defendant advising of her medical issues and requesting a reasonable accommodation in the form of adjustments to her work schedule to accommodate her disability.

95.     Rather than engaging in the interactive process the ADA requires, Defendant refused to consider or otherwise respond to Plaintiff's reasonable accommodation requests.

96.     The accommodations sought by Plaintiff would have enabled Plaintiff to continue to effectively perform the essential functions of her job.

97.     Alternatively, had Defendant engaged in the interactive process with Plaintiff in a good faith effort to accommodate her disability, other reasonable accommodation(s) could have been identified.

98.     Without providing Plaintiff with the requested accommodations or engaging in good faith in the interactive process required, Defendant decided to terminate her employment.

99.     Defendant failed to make reasonable accommodations for Plaintiff's known disability-related limitations in violation of Defendant's obligations under the ADA.

100.   Defendant took adverse employment actions against Plaintiff based on the need to make reasonable accommodations for her disability in violation of the ADA.

101.   Defendant intentionally, with malice and reckless indifference to Plaintiff's rights, violated the ADA by taking adverse employment actions against her because of her disability and/or her need for reasonable accommodation.

102.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered out of pocket losses, at times did not obtain necessary medical treatment due to the out-of-pocket cost, and has been deprived of job-related economic benefits, including income in the form of wage and other job-related benefits, health insurance benefits, and the ability to apply for disability benefits.

103.   As a direct and proximate result of Defendant's conduct, Defendant caused, and will continue to cause, Plaintiff to suffer damages for physical pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

104.   Plaintiff is entitled to reinstatement to Defendant's employment, or, if reinstatement is not feasible under the circumstances, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT FIVE
## Americans with Disabilities Act
### (Discriminatory Termination under the ADA)

105.  Plaintifff reasserts and incorporates by reference all preceding paragraphs of the Amended Complaint.

106.  As outlined above, Defendant terminated Plaintiff's employment because of her disability.  Defendant's purported "reason" for such adverse treatment of Plaintiff is false and a pretext for intentional discrimination.  Defendant further treated similarly situated non-disabled employees differently from Plaintiff.

107.  Defendant would not have discharged Plaintiff had she not had a serious, disabling health condition, been perceived as disabled, and/or had a record of a disability.

108.  Defendant intentionally, with malice and reckless indifference to Plaintiff's rights, terminated her employment because of her disability and/or treated her differently that non-disabled coworkers with respect to the terms and conditions of her employment, despite Defendant's knowledge that the ADA required equal terms, conditions and privileges of employment for employees with a disability, perceived as disabled, or record of disability.

109.  As a direct and proximate result of Defendant's intentional discrimination in violation of the ADA, Plaintiff suffered out of pocket losses and

has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, health insurance benefits, and disability benefits.

110.   Defendant caused, and will continue to cause, Plaintiff to suffer damages for physical pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

111.   Plaintiff is entitled to reinstatement to Defendant's employment, or, if reinstatement is not feasible under the circumstances, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT SIX
## Americans with Disabilities Act
### (Retaliation under the ADA)

112.   Plaintifff reasserts and incorporates by reference all preceding paragraphs of the Amended Complaint.

113.   Plaintiff requested reasonable accommodation for her disability.

114.   Defendant retaliated against Plaintiff by deliberately disregarding Plaintiff's need for accommodation and terminating Plaintiff's employment in violation of the company's own professed policies and federal laws. Defendant

20

further treated similarly situated non-disabled employees and/or employees who had not engaged in protected activity differently from Plaintiff.

115. Defendant denied Plaintiff's requests for accommodation and did not engage in the interactive process with her in good faith. But for Plaintiff's requests for accommodation, her employment would not have been terminated.

116. Defendant's termination of Plaintiff's employment was in retaliation for her requests for reasonable accommodation.

117. Defendant's adverse treatment of Plaintiff interfered with her right to receive reasonable accommodation and thus also constituted unlawful retaliation in violation of the ADA.

118. Defendant intentionally, with malice and reckless indifference to Plaintiff's rights, subjected Plaintiff to adverse treatment in retaliation for her protected exercise of rights under the ADA.

119. As a direct and proximate result of Defendant's intentional retaliation in violation of the ADA, Plaintiff suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, health insurance benefits, and disability benefits.

120. Defendant caused, and will continue to cause, Plaintiff to suffer damages for physical pain and suffering, emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

121.   Plaintiff is entitled to reinstatement to Defendant's employment, or, if reinstatement is not feasible under the circumstances, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT SEVEN
## Family Medical Leave Act
### (Interference and Retaliation Claims)

122.   Plaintifff reasserts and incorporates by reference all preceding paragraphs of the Amended Complaint.

123.   Defendant employed Plaintiff for more than twelve months prior to October 2019.  At all times relevant, Plaintiff worked sufficient hours to qualify for FMLA leave.

124.   At all material times, Plaintiff has been an "eligible employee" of Defendant within the meaning of the FMLA.  Defendant employed fifty or more employees within a seventy-five radius of the worksites at which Plaintiff worked during each of at least twenty (20) calendar workweeks in 2019.

125.   During the relevant time period, Plaintiff was entitled to leave, including but not limited to intermittent leave, under the FMLA related to the serious health conditions from which she suffered.  Rather than allowing Plaintiff to use

FMLA leave or notify her of her rights under the FMLA, Defendant subjected Plaintiff to adverse actions, including termination.

126.   Defendant failed to inform Plaintiff of her protected rights under the FMLA and interfered with, restrained and/or failed to allow Plaintiff to take FMLA leave to seek treatment for her serious health conditions despite its knowledge of her need for FMLA leave.

127.   Defendant further subjected Plaintiff to adverse employment actions due to her attempts to exercise rights afforded by the FMLA.   Plaintiff was disciplined, subject to disparate terms and conditions of employment as compared to employees who did not suffer from serious health conditions, denied protected leave, and eventually terminated.

128.   Defendant would not have taken these adverse employment actions had Plaintiff not requested intermittent leave or changes to her work scheduled that should have been granted in accord with the FMLA.

129.   Defendant's denial of notice to Plaintiff and intentional interference with and/or retaliation for Plaintiff's attempts to exercise FMLA-protected rights resulted in her out of pocket losses, and Plaintiff has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, health insurance, and/or disability benefits.

130.   Defendant's violation of the FMLA was knowing and willful. Defendant knew or showed reckless disregard for the fact that its conduct was in violation of the FMLA.

131.   Plaintiff is also entitled to reinstatement to Defendant's employment, or, if reinstatement is not feasible under the circumstances, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

(a)    For a trial by jury;

(b)    For a finding that Defendant violated Plaintiff's rights as set forth herein;

(c)    For a judgment in Plaintiff's favor for unpaid wages, liquidated damages, prejudgment interest on unpaid wages, and reasonable attorneys' fees and costs in accordance with the FLSA;

(d)    For all other legal and equitable relief as may be appropriate to effectuate the purposes of the FLSA;

(e)    Judgment for all damages, lost wages, benefits, expenses, or other compensation Plaintiff lost as a result of Defendant's violations of Title VII;

(f)     Judgment for all compensatory and punitive damages to be determined by the jury as a result of Defendant's violations of Title VII;

(g)     Judgment for all damages, lost wages, benefits, expenses, or other compensation Plaintiff lost as a result of Defendant's violations of the ADA;

(h)     Judgment for all damages for Plaintiff's mental and emotional suffering, other pain and suffering, and out of pocket losses suffered as a result of Defendant's violations of the ADA;

(i)     Judgment for all damages, lost wages, benefits or other expenses which Plaintiff sustained as a result of Defendant's conduct in violation of the FMLA, including an equal amount as liquidated damages;

(j)     In the alternative, award(s) of nominal damages under Title VII, the FMLA and/or ADA;

(k)     Judgment ordering reinstatement of Plaintiff or an award of front pay equivalent to the pay and benefits Plaintiff would likely have earned were it not for Defendant's unlawful acts;

(l)     Judgment awarding pre-judgment and post-judgment interest on all unpaid wages or other damages from the date such wages were earned and due or such damages were incurred;

(m)     Judgment awarding Plaintiff's reasonable attorneys' fees and expenses

of litigation;

(n)     All other equitable and other further relief as this Court deems proper

and just.

Dated this 9th day of September, 2021.

Respectfully submitted,


*/s/Beth A. Moeller*
Beth A. Moeller
Georgia Bar No. 100158
bmoeller@moellerbarbaree.com
MOELLER BARBAREE LLP
1175 Peachtree Street, N.E.
Suite 1850
Atlanta, Georgia 30361
Telephone: (404) 748-9122

# EXHIBIT
# 1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
TTY (404) 562-6801
FAX (404) 562-6909/6910
Website: www.eeoc.gov

EEOC Charge No.:    410-2020-00169

Jennifer A. Stallard                                   Charging Party
124 Avalon Drive
Danville, Virginia 24541

Osmose Utilities Services, Inc.                        Respondent
635 Highway South
Peachtree City, Georgia 30269

## DETERMINATION

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Title VII) and Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. (ADA). Timeliness and all other jurisdictional requirements for coverage have been met.

Charging Party alleges that she was denied a promotion because of her sex. She furthermore contends that, after she complained that women in the company were not given the same opportunities as men to advance to management, her supervisor began micromanaging her and criticizing her performance. She furthermore contends that she was denied a reasonable accommodation and discharged after requesting an accommodation for her disability. Charging Party alleges that the foregoing actions constituted discrimination on the basis of her sex and disability, in violation of Title VII and the ADA.

Respondent denies the allegations.

The Commission's investigation did not disclose sufficient evidence to support Charging Party's allegations that she was denied a promotion because of her sex and females as a class were denied advancement to management because of their sex in violation of Title VII.

The evidence does reveal, however, that Charging Party was denied a reasonable accommodation and discharged after disclosing her disability to management and making a request per her doctor's recommendation. On October 2, 2019, Charging Party informed her Foreman, Supervisor, and General Manager about her disability, the medicine she was taking, and the need for an accommodation. On October 3, 2019, Charging Party informed the Vice President and Human Resources about her disability and need for an accommodation. On October 4, 2019, Charging Party was discharged. Respondent contends that it made a decision to terminate Charging Party for performance and attendance issues on October 1, 2019, prior to her medical disclosure; however, there was no credible evidence to support its contention. Respondent's proffered reasons do not withstand scrutiny and is a pretext for discrimination.

Page 2
EEOC Charge No. 410-2020-00169

Based upon the evidence and the record as a whole, there is reasonable cause to conclude that Charging Party was discriminated against because of her disability and discharged in retaliation for requesting an accommodation, in violation of the ADA.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation (i.e., settlement).  Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. If you wish to participate in conciliation, please email **Investigator Deante Topps at <u>deante.topps@eeoc.gov</u> within 10 days from the date of this LOD.**  When Respondent declines to enter into conciliation discussions, or when the Commission's representative for any reason is unable to secure a settlement acceptable to the Commission, the Commission shall so inform the parties in writing and advise them of the court enforcement alternative available to Charging Party and the Commission. The confidentiality provisions of the statute and Commission Regulations apply to information discussed or given during conciliation.

You are reminded that Federal Law prohibits retaliation against persons who have exercised their rights to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in the Commission's investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

On Behalf of the Commission:

8/17/21

_____                                    _____
Date                                          Darrell E. Graham
                                              District Director
                                              Atlanta District Office